UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHANDRA HATCH and LORA PATE, | ) | |
| Individually and on behalf of all | ) | |
| others similarly situated, | ) | Case No. 1:18-cv-2118 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| FERRARA CANDY CO., | ) | |
| an Illinois corporation | ) | CLASS ACTION |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs Chandra Hatch and Lora Pate, individually and on behalf of all others similarly

situated, allege the following facts and claims upon personal knowledge, investigation of counsel,

and information and belief against Ferrara Candy Co., ("Ferrara" or "Defendant").

## NATURE OF THE CASE

1.      "Informed consumers are essential to the fair and efficient functioning of a free

market economy.  Packages . . . should enable consumers to obtain accurate information as to the

quantity of the contents and should facilitate value comparisons."  15 U.S.C.A. § 1451.

2.      The average consumer spends a mere 13 seconds making an in-store purchasing

decision.[1]  That decision is heavily dependent on a product's packaging, and particularly the

package dimensions: "Faced with a large box and a smaller box, both with the same amount of

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-
windown.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping
Takes Only Seconds…In-Store and Online").

product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

3.      Plaintiffs bring this class-action lawsuit based on Defendant's misleading, deceptive and unlawful conduct in packaging its "theater-box" candy in non-transparent cardboard containers, which contain substantial empty space, or slack-fill.  This lawsuit includes the following theater-box candy products: Lemonhead, Jujyfruits, Jujubes, Red Hots, Trolli, Chuckles, Black Forest Gummi, Jawbuster, Jawbreaker, Brach's, Super Bubble, Rainblo, and Atomic Fireball (collectively, "Products" or individually "Product").  As described more fully herein, the slack-fill contained in each Product is non-functional, and therefore misleading and unlawful.

4.      Accordingly, Plaintiff Hatch brings this case for declaratory and equitable relief and to recover damages on behalf of an Illinois Subclass for Defendant's false, deceptive, unfair, and misleading packaging of the Products, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/2.

5.      Plaintiffs also bring this action on behalf of themselves and all others similarly situated to recover damages and injunctive relief for Defendant's false, deceptive, and misleading conduct, and for disgorgement of Defendant's unjust enrichment.

**PARTIES**

6.      Plaintiff Chandra Hatch is an Illinois citizen and resident of Chicago, Illinois.  On at least one occasion during the Class Period (as defined below), Plaintiff purchased a Lemonhead Product and a Red Hots Product at a Walgreens store in Chicago, Illinois, for personal, family, or

---

[2] http://www.consumerreports.org/cro/magazine-archive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

household purposes. Based on the claims alleged herein, the Lemonhead Product and Red Hots Product are substantially similar to the other theater-box Products marketed and sold by Defendant. The purchase price of each Product was $1.25. Plaintiff's claim is typical of all Class Members in this regard. In addition, the non-functional slack-fill contained in the Products purchased by Plaintiff is typical of the slack-fill contained in the Products purchased by Class Members.

7.      Plaintiff Lora Pate is a Colorado citizen and resident of Aurora, Colorado. On at least one occasion during the Class Period (as defined below), Plaintiff purchased a Lemonhead Product and a Red Hots Product at a Walgreens store in Aurora, Colorado, for personal, family, or household purposes. Based on the claims alleged herein, the Lemonhead Product and Red Hots Product are substantially similar to the other theater-box Products marketed and sold by Defendant. The purchase price of each Product was $1.59. Plaintiff's claim is typical of all Class Members in this regard. In addition, the non-functional slack-fill contained in the Products purchased by Plaintiff is typical of the slack-fill contained in the Products purchased by Class Members.

8.      Defendant Ferrara Candy Company is an Illinois corporation with its corporate headquarters located in Oakbrook Terrace, Illinois. Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

## JURISDICTION AND VENUE

9.      This is a class-action lawsuit seeking monetary damages and equitable relief pursuant to Federal Rule of Civil Procedure 23.

10.      This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act in that damages exceed $5,000,000 in the aggregate, and the parties include citizens of different states. 28 U.S.C. § 1332(d)(2).

11.     This Court has personal jurisdiction because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within Illinois through its sales of the Products to Illinois consumers.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of Illinois.  In addition, Defendant is headquartered in Oakbrook Terrace, Illinois.  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## ALLEGATIONS OF FACT

### Federal and Illinois State Law Prohibit Non-Functional Slack-Fill

13.     Defendant's deceptive and misleading conduct, as described herein, violates the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 343(d)); and the Code of Federal Regulations Title 21 part 100, *et seq.*, as well as parallel Illinois statutes.  As described in detail below, these violations contravene the Illinois Consumer Fraud and Deceptive Business Practices Act, which prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact."  815 Ill. Comp. Stat. Ann. 505/2.

14.     21 C.F.R. § 100.100 prohibits nonfunctional slack-fill:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.  Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

4

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

15.     In addition, pursuant to 21 C.F.R. § 100.100, a container is presumptively misleading if it does not allow the consumer to fully view its contents and if it contains non-functional slack-fill.

16.     In adopting 21 C.F.R. 100.100, the United States Food and Drug Administration ("FDA") stated: "Congress determined . . . that packages that are only partly filled (containing slack-fill) create a false impression as to the quantity of food they contain."  Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993). "In fact, Congress stated in arriving at section 403(d) of the act that that section is 'intended to reach deceptive methods of filling where the package is only partly filled and, *despite the declaration of quantity of contents on the label*, creates the impression that it contains more food than it does.'" *Id*. at 64129 (internal citations omitted) (emphasis added).

17.     Illinois state law also prohibits non-functional slack-fill and incorporates language identical to 21 U.S.C. § 343(d): "A food is misbranded . . . . (d) If its container is so made, formed or filled as to be misleading."  410 Ill. Comp. Stat. Ann. 620/11.

**Defendant's Products Contain Substantial Non-Functional Slack-Fill**

18.     Defendant manufactures, markets, promotes, labels, advertises, and sells the Products at issue.

19.     The Products are sold throughout the State of Illinois and nationwide, and are regularly sold at grocery stores, supermarkets, convenience stores, and other food retail outlets.

20.     The Products are all packaged in non-transparent, cardboard containers, which contain substantial empty space.

21.     The box enclosing the Lemonhead candy, for example, appears as follows:



22.     The Lemonhead Products are uniformly packaged in opaque cardboard containers that have the following dimensions: 3-1/4" x 13/16" x 5-1/2."

6

23.     The Lemonhead Products are also uniformly packaged with approximately 33% slack-fill.  Because the containers are opaque, non-pliable cardboard containers, consumers, such as Plaintiffs and members of the Classes, could not see the contents of the container at the time of purchase, including the substantial, non-functional slack-fill.



24.     The cardboard container enclosing the Lemonhead candy is typical of the cardboard container enclosing the other theater-box Products manufactured and sold by Defendant.  In addition, the slack-fill contained in the Lemonhead Product is typical of the slack-fill contained in the other Products.

25.     Defendant engaged in uniform, unlawful conduct during the class period, because it packaged each of its Products in uniformly sized containers with a uniform amount of slack-fill.

**The Products' Slack-Fill Is Non-Functional**

26.     The slack-fill in the Products is non-functional, and therefore unlawful, because it cannot be justified by any of the safe-harbor provisions contained in 21 C.F.R § 100.100(a).

**21 C.F.R § 100.100(a)(1) [Protection of the Contents of the Package]**

27.     The slack-fill in the packaging of the Products does not protect the Product contents.

28.     A classic example of slack-fill that is designed to protect the contents of a package is the empty space contained in bags of potato chips.  The packages are filled with air to protect the fragile chips during shipment and in retail display.

29.     By contrast, here, the substantial slack-fill may actually *increase* the risk of damaging the candy contained in the packaging.  The more empty space there is in the Products' packaging, the more movement the Products will likely experience within the packaging, which increases the potential the candy pieces will be damaged.

30.     In addition, the rigid cardboard containers in which the Products are packaged provide significant protection to the candies from external forces that may impact the candy.

31.     Moreover, certain of the Products are alternatively sold in soft, malleable bags, which offer little protection to the candies, thereby demonstrating the candies' inherent durability, as well as Defendant's implicit recognition of it.

**21 C.F.R § 100.100(a)(2) [Requirements of Machines Used for Enclosing the Contents]**

32.     There is no machine requirement used for enclosing the Product contents that would justify the Products' substantial slack-fill.

33.     In industry-standard packaging-line machinery, a candy container is held in a vertical position by a "cartoner" machine with the top end of the container remaining open. The container is moved in an intermittent manner such that the opening of the container is indexed directly below the filler. The filler typically consists of a hopper containing bulk quantities of product. The product is then conveyed from the hopper to the scale, which weighs the pre-determined amount of product. Next, the product is dropped into the container through its open end, either directly through a chute into the container, or into a dispenser with a gate that opens when the container is in position.

34.     After the container is filled, the cartoner machine conveys the container to the next station, where the container's top flaps are sealed. Thereafter, the container exits the cartoner machine to the tray or case packer.

35.     The industry standard machines are capable of filling and enclosing the Products with far less slack-fill than the Products currently contain.

36.     In fact, very similar candy products packaged and sold in very similar cardboard containers contain substantially less slack-fill than Defendant's Products. In addition, Defendant manufactures and sells a similar candy product packaged in a similar container, but which contains a substantially higher level of fill than the Products.

37.     Defendant has also unequivocally demonstrated that it can increase the fill in the Products. Defendant sells a promotional Lemonhead Product that contains 15% more candy than a typically filled container. Yet Defendant packages the promotional Lemonhead Product containing 15% more candy in the *exact same size* container as the typically filled Products (3-

9

1/4" x 13/16" x 5-1/2"), notwithstanding the increased fill.  *See* image of the promotional 15%-more Lemonhead Product immediately below.  Due to the similarity of the Lemonhead Product and other Products, on information and belief, Defendant could similarly increase the fill level in the other theater-box Products.



38.     Accordingly, the slack-fill cannot be justified by the machines and equipment used to enclose the Products.

**21 C.F.R § 100.100(a)(3) [Unavoidable Product Settling During Shipping and Handling]**

39.     The substantial slack-fill is not due to unavoidable product settling.

40.     Due to the size, shape and consistency of the candies, when placed in the packaging, the candy pieces create minimal void patterns, and experience very little "settling."

**21 C.F.R § 100.100(a)(4) [Need for the Package to Perform a Specific Function]**

41.     The Products' packaging does not "perform a specific function," such as playing a role in the "preparation or consumption" of the candies (for example, cereal that is sold in a bowl-shaped container to which a consumer adds milk and that necessarily requires empty space to accommodate that purpose).

42.     Nor is any such function "clearly communicated to consumers."  The Products' packaging and labeling are silent as to any function beyond merely holding the candies.

**21 C.F.R § 100.100(a)(5) [Reusable Container Where the Container Has Independent Value]**

43.     The Products are not packaged in a container that is meant to be reused or otherwise used after the candies are consumed.

44.     Nor is the packaging a "durable commemorative or promotional package."

45.     In addition, the packaging does not have any value that is both significant in proportion to the value of the Products and independent of its function to hold the food.

46.     Rather, the packaging is a cardboard container that is expected to be discarded after the candies are consumed, and a reasonable consumer does not attach any independent value, monetary or otherwise, to the Products' packaging.

**21 C.F.R § 100.100(a)(6) [Food Labeling and Packing Requirements]**

47.      As described herein, the level of fill in the Product containers can certainly be increased.  For example, Defendant has unequivocally demonstrated this by selling certain promotional Lemonhead Products with increased fill levels in containers identical to the ones containing a reduced fill level.

48.     Further, there is nothing unique or inherent to the Products (e.g., their shape, size, composition, etc.) that would prevent more of them from being placed in the packaging.  Indeed, very similar candy products packaged in very similar packages—including at least one other product Defendant manufactures and sells—contain higher levels of fill than the Products.

49.     There is also nothing unique or inherent to the candies that requires Defendant to package them in a specific packaging material, such as the cardboard containers at issue.

50.     Nor is there an industry standard for packaging the Products in a container of a specific shape, size, or in one containing a specific number of candy pieces.  In fact, Defendant

can and has packaged certain of the Products in other packaging types, such as soft, malleable bags of varying sizes and shapes, as well as in smaller cardboard boxes.

51.     Finally, the packaging could be reduced and still accommodate the required food labeling.  Currently, the required food labeling is contained on roughly half of the surface area of one side of the Products' container.  In addition, similar candy products—including certain of the Products at issue—are packaged in containers smaller than Defendant's Products, and yet the smaller containers successfully accommodate the required food labeling.

**The Products' Packaging Is Misleading**

52.     Plaintiffs relied on the Products' packaging as a representation of the quantity of candy contained in the packaging.  Accordingly, Plaintiffs were misled and deceived because they believed they were purchasing more Product than was actually received.

53.     Similarly, the Products' packaging was a material factor in Plaintiffs' and Class Members' decision to purchase the Products.  Reasonable consumers, such as Plaintiffs and Class Members, attached importance to the size of the box as a representation of the quantity of candy they believed they were purchasing.

54.     Had Plaintiffs known Defendant's packaging contained substantial slack-fill, they would not have purchased the Products, or would have purchased them on different terms.

55.     Plaintiffs would, however, likely purchase the Products in the future if the Products complied with the applicable laws.

**CLASS ALLEGATIONS**

56.     Plaintiffs hereby re-allege and incorporate the foregoing allegations as if set forth herein in their entirety.

57.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil

Procedure 23(b)(2) and 23(b)(3) on behalf of themselves, on behalf of all others similarly situated,

and as members of the "Nationwide Class," defined as follows:

> All citizens of the United States, excluding citizens of California and
> Missouri, who, within the relevant statute of limitations period,
> purchased Defendant's Products.

Plaintiff Hatch brings this action as a class action pursuant to Federal Rules of Civil

Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated,

and as a member of the "Illinois Subclass," defined as follows (collectively with the Nationwide

Class, the "Classes"):

> All citizens of Illinois who, within three years prior to the filing of the
> Complaint, purchased Defendant's Products.

58.     Excluded from the Classes are: (i) Defendant, its assigns, successors, and legal

representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state,

and/or local governments, including, but not limited to, their departments, agencies, divisions,

bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in

bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any

judicial officer presiding over this matter and person within the third degree of consanguinity to

such judicial officer.

59.     Plaintiffs reserve the right to amend or otherwise alter the class definitions

presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response

to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

60.     This action is properly maintainable as a class action pursuant to Federal Rule of

Civil Procedure 23 for the reasons set forth below.

61.     **Numerosity**:  Members of the Classes are so numerous that joinder of all members

is impracticable.  Upon information and belief, the Nationwide Class consists of hundreds of

thousands of purchasers dispersed throughout the United States, and the Subclass likewise consists of tens of thousands of purchasers throughout the State of Illinois. Accordingly, it would be impracticable to join all members of the Nationwide Class and Illinois Subclass before the Court.

62.      **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Classes that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether the Products' containers or packaging were made, formed, or filled as to be misleading;

- Whether the Products contained non-functional slack-fill;

- Whether Defendant labeled, packaged, marketed, advertised and/or sold the Products to Plaintiffs and Class Members, using false, misleading and/or deceptive packaging;

- Whether Defendant misrepresented material facts in connection with the packaging, marketing, advertising, and/or sale of the Products;

- Whether Defendant violated the ICFA by selling the Products with false, misleading, and deceptive packaging;

- Whether Plaintiffs and the Classes are entitled to equitable and/or injunctive relief;

- Whether Plaintiffs and the Class Members have sustained damages as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiffs and Class Members; and

- Whether Defendant was unjustly enriched by its misleading and deceptive practices.

14

63.     **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent because Plaintiffs, like the Class Members, purchased Defendant's misbranded Products.  Defendant's unlawful, unfair and/or fraudulent conduct concerns the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Classes sustained similar injuries arising out of Defendant's conduct.  Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

64.     **Adequacy:** Plaintiffs are adequate representatives of the Classes they seek to represent because their interests do not conflict with the interests of the Members of the Classes Plaintiffs seek to represent.  Plaintiffs will fairly and adequately protect the interests of members of the Classes and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer-protection litigation.

65.     **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a.     The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

   b.     Absent a Class, the members of the Classes will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

   c.     Given the size of individual Class Members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

15

d.  When the liability of Defendant has been adjudicated, claims of all members of the Classes can be administered efficiently and/or determined uniformly by the Court; and

e.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and members of the Classes can seek redress for the harm caused to them by Defendant.

66.  Because Plaintiffs seek relief for all members of the Classes, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

67.  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

68.  The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

69.  Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CLAIMS FOR RELIEF**
**COUNT I**
**Violation of the Illinois Consumer Fraud and**
**Deceptive Practices Act, 815 ILCS 505/1, *et seq.***
**(By Plaintiff Hatch On Behalf of the Illinois Subclass)**

70.  Plaintiff Hatch repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

16

71.     The purpose of the Illinois Consumer Fraud and Deceptive Practices Act is to protect consumers against fraud and unfair and deceptive acts in the conduct of commerce.

72.     To make a *prima facie* claim for violation of the ICFA, Plaintiffs must show the following, in pertinent part:

      a.     Defendant made statements or other representations that were either false or misleading, or fraudulent, or false promises, or misrepresentations, or the concealment, suppression or omission of material facts ("false or misleading representations");

      b.     Defendant's false or misleading representations were made with the intent that consumers would rely upon the deception;

      c.     Defendant's false or misleading representations were made in the course of trade or commerce;

      d.     Defendant's false or misleading representations resulted in actual damage to Plaintiffs; and

      e.     Plaintiffs' actual damage was proximately caused by Defendant's false or misleading representations.

73.     Defendant made false and/or misleading representations and/or omissions by uniformly packaging the Products with a substantial amount of non-functional slack-fill.

74.     Further, Defendant intended that consumers, such as Plaintiff Hatch and Class Members, would rely on its false representations and omissions. Defendant was aware that consumers attach importance to the packaging of the Products, and Defendant sought to take advantage of that fact by packaging the Products in oversized, opaque containers with substantial non-functional slack-fill.

75.     Defendant's packaging of the Products in oversized, opaque containers was misleading to reasonable consumers, such as Plaintiffs and Class Members. Plaintiffs and Class Members were injured because they received less candy than was represented by the Product packaging.

17

76.     Plaintiff Hatch and Class Members suffered economic damages as a proximate result of Defendant's unlawful conduct as alleged herein, including the difference between the actual value of the Products received, and the value of the Products if they had been as represented.

## COUNT II
## Unjust Enrichment
## (By Plaintiffs On Behalf of the Nationwide Class)

77.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

78.     By purchasing the Products, Plaintiffs and members of the Classes conferred a benefit on Defendant in the form of the purchase price of the slack-filled Products.

79.     Defendant had knowledge of such benefits.

80.     Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

81.     Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions.

82.     Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the Plaintiffs' and members of the Classes' expense, and therefore restitution and/or disgorgement of such economic enrichment is required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, seek judgment against Defendant, as follows:

a.      For an order certifying the Nationwide Class and the Illinois Subclass, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff Hatch as representative

18

of Illinois Subclass; naming Plaintiffs as representatives of the Nationwide Class; and naming Plaintiffs' attorneys as Class Counsel to represent all Classes.

b.      For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.      For an order finding in favor of Plaintiffs, and all Classes, on all counts asserted herein;

d.      For an order awarding all compensatory damages, in an amount to be determined by the Court and/or jury.

e.      For prejudgment interest on all amounts awarded;

f.      For interest on the amount of any and all economic losses, at the prevailing legal rate;

g.      For an order of restitution and all other forms of equitable monetary relief;

h.      For injunctive relief as pleaded or as the Court may deem proper;

i.      For an order awarding Plaintiffs and all Classes their reasonable attorneys' fees, expenses and costs of suit; and

For all such other and further relief as may be just and proper.

Respectfully submitted,

Chandra Hatch and Lora Pate, individually and on behalf of all others similarly situated.

Dated: March 22, 2018          By: /s/ Michael Aschenbrener
Michael Aschenbrener, (6292306)
masch@kamberlaw.com
Adam C. York (62941443)
ayork@kamberlaw.com
KamberLaw LLC
220 N Green St
Chicago, IL 60607
Telephone:(212) 920-3072
Facsimile: (212) 202-6364

19